**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action Number |
| ) | 09-00237-01-CR-W-ODS |
| Ronald Carter, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE (Doc. #38) filed on November 19, 2009, by defendant Ronald Carter ("Carter").[1] On December 11, 2009, the undersigned held an evidentiary hearing on Carter's motions. Carter was present and represented by his counsel, Travis Poindexter. The government was represented by Assistant United States Attorney Patrick Daly. At the evidentiary hearing, the government called two witnesses, Detective Donald Stanze of the Kansas City, Missouri Police Department and Special Agent Steven Lester of the Bureau of Alcohol, Tobacco, Firearms and Explosives. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | KCPD tow procedures |
| Gov't. #2 | Tow-in report |
| Gov't. #3 | KCPD inventory report |
| Gov't. #4 | KCPD investigative report |
| Gov't. #5 | DVD of search warrant execution |
| Def't. #6 | Search warrant application |
| Gov't. #7 | Forfeiture affidavit |

---

[1] A second pleading, the MOTION TO SUPPRESS STATEMENTS (Doc. #37) filed November 19, 2009, has been mooted out by agreement of the parties, based on the government's representation that it will not use any of the disputed statements in its case-in-chief. [Tr at 3-4]

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**

1. Donald Stanze is a detective with the Kansas City, Missouri Police Department assigned to the Gang Squad as well as a drug task force with the Bureau of Alcohol, Tobacco, Firearms and Explosives. Tr. at 4-5.

2. As part of his police duties, Detective Stanze was aware that an undercover drug purchase was made by a confidential informant from Carter after Carter left a residence at 4921 Park, Kansas City, Missouri, in a Ford Excursion, on June 15, 2009. Tr. at 6, 8. Carter remained in the Ford Excursion while the drug transaction took place. Tr. at 38-40.

3. As part of his police duties, Detective Stanze was aware that another undercover drug purchase was made by a confidential informant from Carter after Carter left a residence at 4921 Park, on July 7, 2009. Tr. at 6.

4. Following the second drug purchase, a search warrant was obtained for the residence at 4921 Park. Tr. at 6.

5. The search warrant made no mention of any vehicle. Tr. at 6, 22-25.

6. The search warrant was executed on July 15, 2009, by several officers, including Detective Stanze. Tr. at 7, 27.

7. After Carter had been taken into custody and while evidence was being gathered from the residence, Detective Stanze noted the Ford Excursion that had been used in the drug purchase on June 15, 2009, parked in the driveway of 4921 Park. Tr. at 8, 27-29, 32.

8. Detective Stanze advised the tactical officers to tow and inventory the Ford Excursion for potential seizure and forfeiture inasmuch as the vehicle had been utilized in the commission of a crime. Tr. at 9, 17-18, 20, 31-32, 36-41.

9. Pursuant to the KANSAS CITY, MISSOURI POLICE DEPARTMENT PROCEDURAL INSTRUCTIONS FOR TOWING/ PROTECTIVE CUSTODY VEHICLE AND CONTENTS, law enforcement officers are authorized to place an "investigative hold" on a vehicle which has been used in a crime. Tr. at 10, 33; Gov't. #1.

10. The KANSAS CITY, MISSOURI POLICE DEPARTMENT PROCEDURAL INSTRUCTIONS FOR TOWING AND PROTECTIVE CUSTODY VEHICLE AND CONTENTS specifically provides:

> Vehicles will be towed when the vehicle is known or believed to have
> been used in the commission of a crime and has evidentiary value, unless
> it is processed at the scene and can be released to the owner/operator.

Gov't. #1.

11. Given that Carter had been arrested and taken into custody, Detective Stanze determined that there were no individuals at scene of the search to whom the Ford Excursion could be released. Tr. at 11-12.

12. On July 15, 2009, law enforcement officers had the Ford Excursion towed to a city lot. Tr. at 13-14.

13. Prior to the towing of the Ford Excursion, a search was conducted of the vehicle that found alleged illegal drugs and other inculpatory evidence. Tr. at 15, 18-19, 31, 42.

## PROPOSED CONCLUSIONS OF LAW

In his MOTION TO SUPPRESS EVIDENCE, Carter argues that the search of the Ford Excursion was an unconstitutional search under the Fourth Amendment. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the
> common law, than the right of every individual to the possession
> and control of his own person, free from all restraint or
> interference of others, unless by clear and unquestionable authority
> of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, the search

warrant issued for and executed at 4921 Park on July 15, 2009, made no mention of any vehicles in general or of the Ford Excursion in particular. Consequently, Carter asserts that law enforcement officers had no constitutional right to search the vehicle and, thus, the evidence seized as a result of that search must be suppressed.

Over the years, many exceptions to the warrant requirement have been recognized. One recognized exception is the so-called inventory search. In general, when taking custody of property such as a suspect's vehicle, law enforcement officers may conduct a warrantless search and inventory the contents of the vehicle in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741 (1987). The government argues that the search of the Ford Excursion herein was a valid inventory search. The Court agrees. Indeed, the Eighth Circuit addressed this precise issue in *United States v. Rankin*, 261 F.3d 735 (8th Cir. 2001) – a case not cited by either party.

In *Rankin*, law enforcement officers executed a search warrant on a residence after receiving information from a confidential informant that there were illegal drugs at the residence. *Id*. at 737. The search warrant made no reference to any vehicles. However, just prior to executing the warrant, officers observed:

> [The defendant] exit the house and get into his vehicle, which was parked across the street from the home. [The defendant] started the car's engine but did not depart. [An officer] watched as a pedestrian subsequently walked over to the car and exchanged currency with [the defendant]. The pedestrian then departed, and [the defendant] drove away.

*Id*. The officer then pulled the defendant over, detained him, and took the defendant back to the residence while the search warrant was executed. *Id*. After the defendant was arrested, the arresting officer "directed that the car be searched and towed pursuant to police department

4

guidelines on assets used in the commission of a felony." *Id*. The ensuing search of the car uncovered illegal contraband. *Id*.

On appeal following his conviction, the defendant argued that the search of his car was illegal since the vehicle was not described in the search warrant. The Eighth Circuit disagreed. The court initially noted:

> [The defendant's] car was lawfully seized. Vehicles used to facilitate drug transactions are forfeitable to the United States. To support forfeiture, the "government must establish probable cause amounting to more than a mere suspicion to believe the property was used to facilitate drug transactions."

*Id*. at 739-40 (*quoting*, *in part*, *United States v. Walker*, 900 F.2d 1201, 1204 (8th Cir.1990) (*per curiam*)). Moreover, the court reasoned that "[o]nce the car was legally seized . . . the arresting officers were entitled to inventory the contents of the car and take possession of the items found therein." *Id*. at 740 (*quoting O'Reilly v. United States*, 486 F.2d 208, 210 (8th Cir.1973)).

In the absence of any evidence that the officers were searching the vehicle as "a subterfuge for a 'general rummaging' for incriminating evidence," the court found that the sole issue was whether an inventory search was reasonable in view of the totality of the circumstances. *Id*. In that regard, the court noted:

> Inventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable.

*Id*. (*quoting United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir.1993)). Consequently, the court concluded that "the search of [the defendant's] vehicle was a valid inventory search." *Id*.

For the same reasons articulated by the Eighth Circuit in *Rankin*, the Court likewise concludes in this case, under these facts, that the law enforcement seizure of the Ford Excursion was undertaken in conformity with the police department's policy on asset forfeiture.

Consequently, in the complete absence of any evidence that officers were engaged in a subterfuge to seek out incriminating evidence, the ensuing warrantless inventory search of the vehicle was reasonable and did not violate the Fourth Amendment of the Constitution.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE (Doc. #38) and **FINDING AS MOOT** the MOTION TO SUPPRESS STATEMENTS (Doc #37) filed November 19, 2008 (Doc. #34).

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                */s/ John T. Maughmer*
                **John T. Maughmer**
               **United States Magistrate Judge**